UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Ritrama, Inc. | Civil No. 13-128 (DWF/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| HDI-Gerling America Insurance Company, | |
| Defendant. | |

---

Eric. J. Nystrom, Esq. and Bryan R. Freeman, Esq., Lindquist & Vennum PLLP, counsel for Plaintiff.

Mark J. Feinberg, Esq., Nicholas A. Dolejsi, Esq., and Thomas B. Caswell, III, Esq., Zelle Hofmann Voelbel & Mason LLP, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendant HDI-Gerling America Insurance Company ("Defendant" or "HDI-Gerling"). (Doc. No. 31.)  For the reasons set forth below, the Court grants the motion.

## BACKGROUND

Plaintiff Ritrama, Inc. ("Ritrama") manufactures and sells pressure sensitive flex films and cast vinyl adhesives that are used in labels for various products. (Doc. No. 34 ("Caswell Aff."), Ex. A ¶ 3; Doc. No. 40 ("Hanzal Decl.") ¶ 2.)  For example, Ritrama

manufactures cast vinyl films for various applications, including signage and decals for use on recreational vehicles ("RV"s).  (Hanzal Decl. ¶¶ 2, 3.)

Burlington Graphics Systems, Inc. ("Burlington") is a company that, among other services, manufactures decals for customers in the RV industry.  (*Id*. ¶ 3.)  Burlington, which is not a party to this lawsuit, is a former customer of Ritrama.  (*Id*.)  Between 2006 and July 2010, Burlington purchased cast vinyl film products coated with adhesive from Ritrama, which were then used with decals that were placed onto RVs.  (*Id*. ¶ 3; Caswell Aff., Ex. A ¶ 4.)

Keystone RV Company ("Keystone") is a customer of Burlington and contracted with Burlington to place Ritrama vinyl adhesive products onto the sides of their RVs.  (Caswell Aff., Ex. O at 2-3.)  In December 2007, Keystone notified Burlington of a "field failure" involving Ritrama's cast vinyl adhesive products.  (*Id*. at 8.)  Burlington then notified Ritrama that it had received complaints from customers regarding the decals manufactured using the adhesive products it purchased from Ritrama.  (Caswell Aff., Ex. B ¶ 7.)

On February 27, 2008, a representative of Burlington sent an e-mail to Daryl Hanzal, President of Ritrama, discussing the ongoing issues with the adhesive:

> There has been little info from Ritrama lately on the ink delam[ination] issue.  That greatly concerns me.  We are not going to let this just pass by— we still want to know the root cause and the corrective action to insure [sic] this never again occurs.  The problem has damaged our reputation in the RV industry, and we need to be sure that the issue is resolved.  This is a serious issue, and I am concerned that you have not participated in the recent followup [sic] calls.  The problem is of a magnitude that we will seek an alternate supplier if this is not definitively resolved.

2

(Caswell Aff., Ex. E.)

On July 8, 2008, representatives of Ritrama and Burlington met to discuss the problems with the adhesive. (Caswell Aff., Ex. H.) After the meeting, Ritrama's National Accounts Manager detailed his notes of the meeting in an e-mail to Mark Edwards, the President of Burlington:

> Mark will be meeting with Keystone next Thursday or Friday to update them on the 530 and where we are going with the claims. Mark indicates that Keystone is taking a clean-cut approach of "moving on". Ritrama will discuss the Keystone claims Monday [sic] during conference call. [Burlington] intends to establish an agreement of an hourly charge for re-work with Keystone. Mark will be compiling a summary of the re-work claims submitted to them since April of 2007. Mark has requested that Ritrama provide information as to what they will need to review all material pertaining to the claim . . . .

(*Id.*)

On September 9, 2008, Burlington sent an e-mail titled "Subject: RV Claims" to Ritrama attaching a spreadsheet for "3 of the RV claims" and describing claims for monetary damages totaling $53,219.37 resulting from Ritrama's defective cast vinyl adhesive product. (Caswell Aff., Exs. I & J.) A representative of Ritrama responded to Burlington's e-mail in part as follows:

> I know we have been playing a bit of phone tag over the past two weeks. Our group discussed the original $53k claim that was submitted to me. I need to know how much of this claim pertains to "re-work/labor" and "material costs". We would like an idea of how this breaks out. If you can provide this information with a percentage breakdown, that would be helpful. I also need to know a bit more on [Burlington's] expectation as to how much Ritrama should share in this claim. We are concerned about these claims growing further on the $$$ side of things. . . . Ritrama is interested in establishing a resolution here as well as some closure to the entire case. . . .

3

(Caswell Aff., Ex. I.)  Ritrama and Burlington communicated with each other about Ritrama's responsibility for claims relating to the cast vinyl adhesive product failures, as well as future claims arising from the same product failures.  (*Id.*)  During these discussions, Ritrama referred to these complaints as the "RV Claims."  (Caswell Aff., Exs. I & K.)

In a letter dated October 10, 2008, Ritrama's Technical Director, Bill Stalker, presented Burlington President, Mark Edwards, with a settlement proposal:

> [B]urlington is receiving claims from Keystone for defective graphics.  Included in these claims are:  material costs, removal costs, cleaning cost, application cost, etc.  To date Burlington has communicated this claim value to be $53,219.37.
>
> In light of the above, we would like to offer a reasonable settlement proposal of 50% of the $53,219.37, or an immediate credit issued to Burlington in the amount of $26,609.69.  When this credit is issued, Ritrama will consider this claim closed.

(Caswell Aff., Ex. L.)  On November 5, 2008, Bill Stalker of Ritrama sent Mark Edwards of Burlington another offer:

> In regards to the Keystone Complaint, Burlington [] has received $53,219.37 in claims plus an additional $26,000 (approximately) that recently came in.  Though more claims are likely, the rate of incoming complaints appears to be decreasing . . .
>
> In a modification to the previous proposal Ritrama will give a credit of $50,000 to Burlington [] for all claims that pertain to this complaint.  When this credit is issued, Ritrama will consider this complaint closed.

(Caswell Aff., Ex. J.)  Burlington and Ritrama failed to reach a settlement.  By February 2009, claims made by Burlington had reached a total of $118,084.80.  (Caswell Aff., Ex. O at ¶ 37.)

4

Ritrama purchased a General Liability Policy from Gerling for the period from March 31, 2009 to March 31, 2010 (the "Policy"). (Caswell Aff., Ex. M (the "Policy").)[1] The Policy contains, in part, the following terms and conditions:

Section 1 – Coverages

**COVERAGE A     BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

. . .

    b. This insurance applies to "bodily injury" and "property damage" only if:

. . .

        (2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

        (3) *A claim for damages because of "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c**. below, during the policy period* or any Extended Reporting Period we provide under Section **V** – Extended Reporting Periods.

    c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

        (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first;

. . .

All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of the claims is made against any insured.

(Policy at 1 (emphasis added).) Additionally, the Policy establishes a duty to notify in the event of an "offense":

**2.     Duties In The Event of Occurrence, Offense, Claim or Suit**

---

[1] A second policy was sold to Ritrama for the period from March 31, 2010 to March 31, 2011. (Doc. No. 39 ("Freeman Decl.") ¶ 3, Ex. B.)

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or offense such as may result in a claim. To the extent possible, notice should include:
      (1) How, when and where the "occurrence" or offense took place;
      (2) The names and addresses of any injured persons or witnesses; and
      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or offense is not notice of a claim.

(Policy at 10-11.)

In a letter dated January 6, 2011, Burlington's attorney wrote the following:

> . . . The purpose of this letter is to demand reimbursement for the damages Burlington has suffered due to the defective adhesive Ritrama used on products supplied to Burlington from the beginning of 2006 through July, 2008.
>
>     As you know, the vinyl product Ritrama supplied to Burlington with the "700" adhesive and "720" adhesive has failed. The failure has been documented extensively, and was due completely to defective product supplied by Ritrama . . . . The total damages are expected to exceed $4.8 million. Burlington hereby makes demand on Ritrama for reimbursement for the entire $4.8 million of defective product.
> . . .
>     Burlington would prefer to work out an amicable resolution with Ritrama. However, in the event we are unable to reach a satisfactory resolution, we will be commencing litigation against Ritrama for the full amount of Burlington's damages.
>
> Please forward this letter to your insurer and attorneys, and have them contact me to discuss this matter. We would appreciate a response by January 20. In the event we have not heard from your counsel by that date, we will be prepared to commence litigation.

(Freeman Decl. ¶ 8, Ex. G.)

In a letter dated January 27, 2011, Burlington's attorney responded to a letter sent by Ritrama as follows: "We have received your January 18, 2011 letter. The offer set forth at the conclusion of that letter is wholly inadequate. Unless Ritrama makes a serious, good faith offer, we will commence litigation." (Freeman Decl. ¶ 9, Ex. H.)

On April 21, 2011, Burlington filed suit in the Eastern District of Wisconsin against Ritrama (the "Wisconsin action"), asserting that Ritrama's vinyl adhesive product was defective because the vinyl was separating from the adhesive. (Caswell Aff., Ex. N ("Wisconsin Compl.") ¶ 15.) In the Wisconsin action, Burlington asserted claims against Ritrama for breach of express and implied warranties, breach of contract, estoppel, and waiver. (Wisconsin Compl. ¶¶ 52-71.) Burlington sought over $5 million in damages for: (1) reimbursement for warranty claims paid by Burlington; (2) cost of replacement product; (3) lost sales; and (4) labor charges resulting from Ritrama's defective product. (*Id.* ¶¶ 48-51.) In a letter dated June 14, 2011, HDI-Gerling informed Ritrama that it would not provide coverage for the Wisconsin action because, among other reasons, the "claims-made requirement of the Policy's insuring agreement is not triggered, and coverage is precluded." (Doc. No. 39, Freeman Decl. ¶ 11, Ex. J at 000719.)

On January 14, 2013, Ritrama filed the present suit against HDI-Gerling seeking indemnification, and asserting the following claims: (1) Declaratory Judgment (Defense); (2) Declaratory Judgment (Indemnification); and (3) Breach of Contract. (Doc. No. 1, "Compl." ¶¶ 24-46.) Specifically, Ritrama seeks a declaration that the Policy covers defense and investigation costs, as well as any damages Ritrama has or may become obligated to pay as a result of the claims made against Ritrama in the

7

Wisconsin action.  (Compl. ¶ 5.)  HDI-Gerling denies that coverage exists under the Policy and has moved for summary judgment on all claims.  (Doc. No. 31.)

## DISCUSSION

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Summary Judgment

Liability insurance is meant to cover risks of future events. *See, e.g.*, *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 924 n.6 (Minn. 1983) (citation omitted) ("Insurance cannot be issued for a known loss. Once the loss has occurred, there is no longer any "risk.").[2] When an insurer has notice of a claim prior to the policy period, there is no coverage for that claim. *See, e.g.*, *Wooddale Builders, Inc. v. Md. Cas. Co.*, 722 N.W.2d 283, 293 (Minn. 2006); *City of Mankato v. League of Minn. Cities Ins. Trust*, Civ. No. 93-1090, 1993 WL 527886, at *1 (Minn. Ct. App. 1993) ("Claims-made policies provide coverage for claims first made during the life of the policy.").

The Policy is consistent with the requirement that coverage not be issued for a known loss. The Policy specifically provides liability coverage for a claim first made during the policy period. (Policy at 1.) Here, HDI-Gerling asserts that Burlington made a claim for damages against Ritrama before Ritrama took out the Policy with HDI-Gerling, and therefore the Policy does not, as a matter of law, cover Ritrama's claim for indemnification of the underlying claims regarding the alleged failure of Ritrama's adhesive products. Ritrama, however, argues that HDI-Gerling has failed to meet its burden to show that, as a matter of law, Burlington made a claim against Ritrama prior to the inception of the insurance policy on March 31, 2009.

---

[2]  The parties do not dispute that Minnesota law applies to this action.

At the heart of HDI-Gerling's motion for summary judgment, and the viability of Ritrama's claims in this action, is the issue of whether Burlington made a claim for property damage before the beginning date of the Policy period. Here, the Policy provided coverage starting on March 31, 2009. (Caswell Aff., Ex. M. at 001097.) Moreover, the Policy provides coverage for a claim that is "*first made* against [the] insured . . . *during* the policy period." (*Id*. at 001104 at § 1.b(3) (emphasis added).) Further, a claim is made "[w]hen notice of such claim is received and recorded by any insured." (*Id*. § 1.c.(1).)

HDI-Gerling contends that Burlington made claims against Ritrama for the failure of Ritrama's adhesive product as used in RV decals well before the effective date of the Policy. Ritrama counters that the evidence shows that Burlington made a claim against Ritrama between the effective Policy dates (March 31, 2009 to March 31, 2011), and specifically points to the January 6, 2011 and January 27, 2011 letters from Burlington's attorney demanding payment of monetary damages. Ritrama argues that, prior to March 31, 2009, only ordinary communications between Burlington and Ritrama were made in an attempt to solve a business issue. Ritrama stresses that prior to March 31, 2009, no attorneys were involved, and argues that no threats of lawsuits or legal demands for monetary relief were made.

The relevant communications occurred in 2008 and early 2009: (1) the February 27, 2008 e-mail, wherein a representative of Burlington discussed ongoing problems with the Ritrama's adhesive products and sought information on the root cause and corrective action, while also noting that the problem had damaged Burlington's

10

reputation in the RV industry and that Burlington would seek another supplier if the issue was not resolved; (2) the July 2008 communications between representatives of Ritrama and Burlington discussing the "RV claims"; (3) the September 9, 2008 e-mail from Burlington to Ritrama attaching a spreadsheet containing the "RV claims" and describing monetary damages totaling over $53,000; (4) Ritrama's response to the $53,000 claim; (5) further discussions between Ritrama and Burlington relating to Ritrama's responsibility for the "RV claims" and future claims; (6) an October 6, 2008 letter from Ritrama with an offer to settle the claims for just over $26,000; and (7) the November 5, 2008 letter from Ritrama offering to settle the claims for $50,000. All of these communications occurred before coverage under the Policy began on March 31, 2009. HDI-Gerling also points out that, in the Wisconsin Action, Ritrama acknowledged that "[o]n September 9, 2008, [Burlington] submitted the first set of RV claims to Ritrama totaling $53,219.37," and that "[b]y February 2009, as additional claims were submitted by [Burlington], and in turn submitted to Ritrama, the claims had reached a total of $118,084.80." (Caswell Aff., Ex. O at ¶¶ 36-37.)

The parties dispute the meaning of the term "claim" in the Policy. HDI-Gerling argues that a claim is an assertion by a third party that the insured may be liable to it for damages within the risks covered by the Policy. (*See generally* Doc. No. 43 at 11-13.) Ritrama argues that the term "claim" is narrower and means "a legal demand for monetary relief, which necessarily includes within it the threat of legal compulsion and invocation of a binding adjudicative process." (Doc. No. 38 at 16.)

11

Courts apply general principles of contract interpretation to the construction of an insurance policy. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). Therefore, courts give the words of a policy their plain and ordinary meaning. *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001). The term "claim" is not defined in the Policy and, therefore, the Court must analyze it in the context of the Policy as a whole. *Wanzek Constr. Inc. v. Emp'rs Ins. of Wausau*, 667 N.W.2d 473, 477 (Minn. Ct. App. 2003), *aff'd* 679 N.W.2d 322 (2004).

Here, giving the word "claim" its plain and ordinary meaning within the context of the Policy as a whole, the Court agrees with HDI-Gerling that a claim is not limited to demands made by an attorney or those that threaten litigation. Nowhere in the Policy is it suggested that a claim is so narrowly limited. Instead, a "claim" is properly understood as an assertion by a third party that the insured may be liable to it for damages within the risks covered by the Policy. Indeed, the Policy distinguishes between a claim and a suit. The Policy specifically defines the term "suit" as a "civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are alleged . . . ." (Policy at 17.) The definition of "suit" in the Policy does not suggest that a "suit" is the same as a "claim" and the use of both (with suit being defined) suggests that a "claim" means something different than suit. *See, e.g.*, *City of Mankato*, 1993 WL 527886, at *1 ("The term 'claim' is not defined in the policy. Yet, the policy, by distinguishing between a claim and a suit, indicates that actions short of a lawsuit can constitute a claim."). That a "claim" can constitute an assertion by a third party that the insured may be liable to it for damages within the risks covered by the Policy is underscored by the

12

parties' use of the word "claim" in their ordinary dealings. Namely, the communications between Ritrama and Burlington in 2008 and early 2009 demonstrate that the parties themselves repeatedly referred to Burlington's demands for compensation for the RV decal failures as "claims." (*See, e.g.*, Caswell Aff., Exs. I-L.)[3] Thus, the Court determines that a "claim" can constitute an assertion by a third party that the insured may be liable to it for damages within the risks covered by the Policy.

Ritrama attempts to equate a "claim" with a demand for monetary relief that also includes a threat of legal compulsion. The Court, however, disagrees and finds that the caselaw relied upon by Ritrama is distinguishable or inapposite. For example, Ritrama relies on *Berry v. St. Paul Fire & Marine*, 70 F.3d 981 (8th Cir. 1995). In that case, the Eighth Circuit Court of Appeals discussed the merits of a letter to the insured as a claim under an insurance policy, finding that it did qualify as a claim. *Berry*, 70 F.3d at 982. In *Berry*, the Eighth Circuit explained that determining what language does or does not constitute a claim is a "difference of degree." *Id*. at 983. The Court then held that a letter that "does not request payment of a specific dollar amount" can still constitute a "claim" defined as a "demand in which damages are alleged." *Id*.; *see also Chartis Specialty Ins. Co. v. Restoration Contractors, Inc.*, Civ. No. 10-1160, 2010 WL 3842372, at *3-4 (D.

---

[3]   Moreover, in the Wisconsin action, Ritrama acknowledged that,"[o]n September 9, 2008, [Burlington] submitted the first set of RV claims to Ritrama totaling $53,219.37," and that "[b]y February 2009, as additional claims were submitted by [Burlington], and in turn submitted to Ritrama, the claims had reached a total of $118,084.80." (Caswell Aff., Ex. O at ¶¶ 36-37.)

Minn. Sept. 27, 2010) (discussing *Berry*). Ritrama contends that because the claim in *Berry* consisted of a letter sent by an attorney and expressly referenced litigation, such characteristics are required here. The Court, however, finds Ritrama's reading of *Berry* too narrow. The primary focus of the *Berry* case is that a letter, taken in context and as a whole, need only be "sufficiently demanding in tone and substance to qualify as a 'claim' within the meaning of the policy in suit." *Id.* at 983. In that case, the policy defined a claim as a "demand in which damages are alleged," and the letter failed to directly demand monetary damages. *Id*. at 982. The Eighth Circuit in *Berry* found that, despite the lack of a direct demand for money, "anyone receiving [the] letter would know that [the insured] was claiming that he was owed money." *Id*. at 982.[4]

In light of the above, the Court considers whether Burlington made a claim prior to the inception of the Policy. After reviewing the communication between Ritrama and Burlington in 2008, the Court concludes that Ritrama had ample warning that there was an issue with respect to the RV decals and sufficient notice that Burlington had made a claim regarding the allegedly faulty decals prior to March 31, 2009. For example, Burlington notified Ritrama that there were problems with the adhesive as early as 2007, two years before the purchase of the Policy. Burlington also sent Ritrama a list of

---

[4] Instead, the Court finds persuasive the cases wherein courts have found that a claim need not include any specific elements, such as the threat of a lawsuit. *See, e.g.*, *City of Mankato*, 1993 WL 527886, at *1 ("[A] request for damages, even though not a suit, will constitute a claim."); *see also Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 439 (2d Cir. 1995) ("Giving the term its ordinary meaning, a claim is an assertion by a third party that in the opinion of that party the insured may be liable to it for damages within the risks covered by the policy.").

14

demands for damages in spreadsheet form as early as 2008.  In addition, Ritrama negotiated with Burlington and exchanged settlement offers and counteroffers in 2008.  In short, the record establishes that Burlington demanded money as early as 2008, that the demand increased to more than $110,000 by February 2009, and that prior to the inception of the Policy, Ritrama attempted to settle both existing and future claims for damages based on the RV adhesive issues.  Although these communications did not involve an attorney or make express reference to litigation, Burlington clearly demanded compensation for harm allegedly caused by Ritrama's faulty adhesive.  Further, the record establishes that  Ritrama purchased the Policy *after* the claim was made.  As a result, the claim regarding Ritrama's allegedly defective adhesive product as used for RV decals is not covered by the Policy.  Therefore, HDI-Gerling is entitled to summary judgment on Ritrama's claim for indemnification under the Policy (Count II).

In addition, HDI-Gerling is entitled to summary judgment on Counts I and III, respectively, Ritrama's claims for failure to defend and breach of contract (which is based on the alleged failure to provide and pay for a defense).  Because there is no coverage under the Policy for the asserted claims, there is also no duty to defend.  *See State Farm Fire & Cas. Co. v. Williams*, 355 N.W.2d 421, 424-25 (Minn. 1984) ("[T]here is no duty on the part of the insurer to defend 'when it is established by the insurer that the facts are such that there is no coverage under the policy for any resulting liability.'") (citation omitted).  In addition, the Policy states:  "[W]e will have no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply."  (Policy at 001104.)

Finally, Ritrama argues that because discovery is not yet completed, HDI-Gerling's motion is premature under Fed. R. Civ. P. 56(d) and thus must be denied. The Court concludes, however, that Ritrama has not set forth essential facts that could be obtained through additional discovery, and that could affect the outcome of the present motion. Thus, the Court concludes that the present motion is not premature.

## ORDER

Based on the files, record, and proceedings herein**, IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. [31]) is **GRANTED**.

2. Defendant is entitled to judgment on Plaintiff's claims in the Complaint.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 29, 2014             s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge